IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

LEONARD PELTIER, and
YORIE VON KAHL,

                              Petitioners,


                v.                              CASE NO. 05-3484-RDR

UNITED STATES PAROLE
COMMISSION, et al.,

                              Respondents.


<u>MEMORANDUM AND ORDER</u>

This action was filed as a civil rights complaint, 28 U.S.C. 1331, in the United States District Court for the District of Columbia[1].  Petitioners also filed a Motion for Preliminary Injunction (Doc. 2) and Motion for Bail (Doc. 3).  They allege defendants have retroactively applied an amended law regarding parole in violation of the ex post facto, bill of attainder, and due process clauses of the United States Constitution.  They sought an order compelling defendants to apply the original law rather than the amendment to their cases and thereunder set parole release dates for them.  They also sought release on bail pending resolution of their complaint, and compensatory and punitive damages as well as attorney fees.  Petitioners named as defendants the United States Parole Commission (USPC), former and present members of the USPC,

_____

[1]      At the time, petitioners already had a Petition for Writ of Habeas Corpus, 28 U.S.C. 2241, pending before the United States District Court for the District of Columbia.  That action was transferred to this court in November, 2004, and was recently dismissed for failure to state a claim for relief.  <u>Von Kahl, et al., vs. United States, et al.</u>, Case No. 04-3418-RDR (Aug. 28, 2006)(hereinafter <u>Von Kahl</u>)(copy attached).

the Office of the Attorney General, former and present U.S. Attorneys General, the United States Bureau of Prisons (BOP), and former and present Directors of the BOP.

On September 17, 2004, the District of Columbia court issued an Order characterizing petitioners' "complaint" as alleging "they are being denied parole in violation of their constitutional rights" (Doc. 4), and finding it "appears to be a petition for writ of habeas corpus." They noted habeas corpus jurisdiction resides in the district where the petitioners are incarcerated, and that the proper respondent, petitioners' warden, was not within their territorial jurisdiction. They ordered petitioners to show cause why this action should not be transferred to this District. On October 12, 2004, petitioners filed a Response arguing the action was not one for habeas corpus relief and should not be transferred. On the same date they filed an Amended Complaint (Doc. 8). On October 15, 2004, the District of Columbia court entered a "Memorandum Opinion and Order" stating "plaintiffs misapprehend the law relating to habeas corpus and cannot vest jurisdiction in this Court by recasting their complaint as one for damages or declaratory or injunctive relief." Order (Doc. 9) at 1. They found "the crux of plaintiffs' claim is that they are being held unlawfully because a parole release date should have been set," and concluded habeas corpus is their "exclusive remedy." Id. at 2. Accordingly, the matter was transferred to this judicial district where Mr. Von Kahl

and Mr. Peltier were confined when the action was filed[2]. Petitioners filed a petition for writ of mandamus with the United States Court of Appeals for the District of Columbia alleging the district court abused its discretion in ordering transfer of this action. The appellate court denied the mandamus petition, finding habeas corpus was petitioners' exclusive remedy for their claims, which "would have at least a 'probabilistic impact' upon the duration of their custody," and that the transfer was proper. This court issued an order finding this matter was construed as a habeas corpus action by the transferor court, and directing that it be designated as a petition for writ of habeas corpus[3]. Although this court recognizes that some claims regarding actions of the USPC might be litigated in a civil rights complaint, it agrees with the transferor court that petitioners' claims seek earlier and immediate release from prison and therefore sound in habeas corpus. <u>Preiser v. Rodriquez</u>, 411 U.S. 475, 479 (1973); <u>Boutwell v. Keating</u>, 399 F.3d 1203, 1209 (10th Cir. 2005). The court finds an evidentiary

---

[2]  Change of address notices filed in December, 2005, indicate plaintiffs have been transferred to federal institutions in other judicial districts. This court retains jurisdiction since they were incarcerated here at the time the action was filed.

[3]  Even if this action had been allowed to go forward as a civil rights complaint, it could be dismissed at this juncture for failure to state a claim. When plaintiffs are prisoners, the court is required by statute to screen the complaint and dismiss the complaint or any portion thereof that is frivolous, fails to state a claim on which relief may be granted, or seeks relief from a defendant immune from such relief. 28 U.S.C. 1915A(a) and (b). Petitioners' allegations fail to state a legal claim whether construed in a habeas corpus petition or a civil rights complaint. Instead of dismissing the civil rights complaint against the named defendants, the transferor court construed it as a habeas corpus petition against the only proper respondent, the Warden at the United States Penitentiary, Leavenworth, Kansas.

hearing is not required because the issues are legal.   Having considered all the materials filed, the court finds as follows.

## FACTUAL BACKGROUND

In 1977, petitioner Leonard Peltier was sentenced to consecutive life terms for killing two FBI agents on June 26, 1975. In 1983, petitioner Yorie Von Kahl was sentenced to life plus fifteen years for killing two United States Marshals on February 13, 1983.   In 1984, Congress enacted the main provision upon which petitioners' claims are based, Public Law 98-473, Title II, Chapter II, Section 235(b)(3)[hereinafter Sec. 235(b)(3)].   The original enactment of this subsection was within the Sentencing Reform Act of 1984 (SRA)[4] and pertinently provided:

> The United States Parole Commission shall set a release date, for an individual who will be in its jurisdiction the day before the expiration of five years after the effective date of this Act, that is within the range that applies to the prisoner under the applicable parole guideline. . . .

Id., 98 Stat. 1987, 2032 (1984).

In the same bill, Congress legislated repeal of the authority of the USPC and the parole statutes as to inmates who would be sentenced under new sentencing guidelines also promulgated under the SRA.   With respect to inmates like petitioners, who were sentenced under parole statutes prior to enactment of the SRA ("old law"

---

[4]        The SRA was a chapter within the "Comprehensive Crime Control Act of 1984," PL 98-473, Title II, which was within a huge, convoluted, bill lumping together many unrelated criminal, civil and appropriations enactments.

inmates), Congress continued the authority of the USPC for a five-year period to set parole dates in their cases.

On December 7, 1987, Congress amended Sec. 235(b)(3).  The amendment was enacted as a part of PL 100-182 (S 1822), an "Act to amend title 18, United States Code, and other provisions of law relating to sentencing for criminal offenses," cited as the "Sentencing Act of 1987."  With regard to Sec. 235(b)(3), Sec. 2 of the 1987 Act pertinently provided: "Section 235(b)(3) of the Comprehensive Crime Control Act of 1984 is amended by striking out 'that is within the range that applies to the prisoner under the applicable parole guideline' and inserting in lieu thereof 'pursuant to section 4206 of title 18, United States Code'."  See id., 18 U.S.C. 3551 Note, Sec. 2(b)(2).  Section 4206(c) provides, "The Commission may grant or deny release on parole notwithstanding the guidelines . . . if it determines there is good cause for doing so."  The 1987 amendment is argued to have changed the substance of Section 235(b)(3) to petitioners' disadvantage.  Some courts have agreed a substantial change was made, while others have opined that the amendment merely clarified Congress' intent.  Bledsoe v. U.S., 384 F.3d 1232, 1234 (10th Cir. 2004), cert. denied, 544 U.S. 962 (2005)("On December 7, 1987 . . . Congress amended the Act to clarify that the terms of the PCRA would continue to govern the sentences of those prisoners sentenced prior to the effective date of the SRA.").  Apparently beginning in 1990, Congress passed other amendments which extended the five-year period set forth in the original enactment to ten, fifteen, eighteen, and most recently,

twenty-one years.

Parole dates were not set for petitioners under the original Sec. 235(b)(3) within five years of its enactment or since. Petitioners' applications for parole are considered pursuant to the amended version of Sec. 235(b)(3) under parole statutes including 18 U.S.C. 4206, which grant the USPC discretion in determining their parole release applications.

**<u>CLAIMS</u>**

Petitioners allege and claim as follows. The original version of Section 235(b)(3) "became effective October 12, 1984." This provision mandated that a prisoner sentenced "under the old system" be "issued a release date within a five-year period from the effective date," which petitioners refer to as mandatory release dates[5]. Under this law, the USPC was commanded to simply process the mandatory release dates within five years. This provision stripped the USPC of all discretion and "mandated" it issue release dates "consistent with the applicable parole guideline." Congress clearly intended that the new "applicable parole guideline" in Sec. 235(b)(3) replaced and "superseded the original sentences imposed by the courts." "Congress repeatedly noted its intent" to retain the USPC and current parole laws "solely" to deal with sentences imposed under the parole system and for "only" a five-year period following

---

[5]        They argue the original Section 235(b)(3) actually shortened their sentences, modifying their "life (plus) sentences to mandatory release within their parole guidelines" and eliminating parole.

the effective date of the SRA.  On the date the original Sec.
235(b)(3) took effect, petitioners were vested with the rights
conferred therein.  USPC regulations allowing for set-off dates of
ten and fifteen years, are in "clear defiance" of the five-year
period mandated in the original Sec. 235(b)(3). Respondent's refusal
to enforce their rights in the original Sec. 235(b)(3) is arbitrary,
capricious, and unconstitutional.

In Section 218(a) of the SRA, Congress expressly repealed the
parole statutes effective the date of enactment, October 12, 1984.
The five-year period in the original Sec. 235(b)(3) ended on October
12, 1989, and the USPC was abolished and all the parole laws were
repealed on that date[6].  On December 1, 1990, "well after" the USPC
and all parole statutes were abolished, Congress enacted an
"intended five-year continuation" of the USPC and the parole
statutes[7].  This enactment "had no operational effect" as there was
no USPC or parole statutes left to continue for five years.  The
amendments enacted since then containing additional extensions also
are of no effect.

On December 7, 1987, Congress amended Sec. 235(b)(3) "to repeal
the mandatory release criteria and to restore the discretionary

---

[6]      Thus, petitioners allege the USPC was abolished and all parole laws were repealed on
October 12, 1984, and again on October 12, 1989.

[7]      Sec. 316 of Public Law 101-650 (Dec. 1, 1990), 104 Stat. 5115 (Extension of Life of
Parole Commission) provided: "For the purposes of section 235(b)(3) of Public Law 98-473 as it
relates to chapter 311 of title 18, United States Code, and the (USPC), each reference in such section
to "five years" or a "five-year period" shall be deemed a reference to "ten years" or a "ten-year
period," respectively.

parole system." This amendment "substantially changed existing law" to petitioners' disadvantage.  Congress "expressly mandated" that the amended version of Sec. 235(b)(3) "only applied to crimes committed after its effective date."  The USPC's retroactive application to petitioners of the amended 235(b)(3) stripped them of their vested rights and is in "direct contravention" of Congress' express intent.  The USPC's retroactive application to petitioners of the amended 235(b)(3) violates the Ex Post Facto Clause, Bill of Attainder, and Due Process clauses of the United States Constitution.

Overall, petitioners claim they were entitled to the setting of certain release dates within five years of the effective date of the original Sec. 235(b)(3), which have been denied.  They complain their terms of imprisonment have been prolonged, their punishment has been increased over what it was at the time of the amendment, and they have consequently been deprived of their right to release.

## DISCUSSION

The claims raised by petitioners are substantially similar to those raised and dismissed for failure to state a claim in their prior habeas corpus action, Von Kahl.  No additional facts or legal theories are presented which would entitle petitioners to a different result in this case.

However, because the Amended Complaint/Petition filed in this case more succinctly and clearly presents some of petitioners' arguments, the court proceeds to comment upon those arguments as

follows.   Petitioners base their claims herein, as well as in the prior case, upon three crucial premises that are without legal merit.   Those premises are: (1) that the USPC has no continuing lawful authority or discretion to determine their release dates and that all parole laws have been repealed as to them; (2) that their sentences were actually modified and shortened by language in the original Sec. 235(b)(3); and (3) that the amended 235(b)(3) does not apply to them.

**CONTINUING AUTHORITY OF THE USPC AND PAROLE STATUTES**

Petitioners assert the USPC has had no authority since 1984 to do anything other than set mandatory release dates in their cases prior to October 12, 1989.   They allege the USPC was completely abolished in either 1984 or 1989, and seem to suggest it has been operating as some sort of rogue agency since then in contravention of Congress' intent.   The court finds these assertions legally frivolous.   Under the SRA, the parole statutes (sometimes herein referred to as "Chapter 311") were plainly and logically repealed, but only as to persons who would be sentenced under the new sentencing guidelines system.   The parole laws were simultaneously by statute, and just as plainly and logically, retained as to persons, including petitioners, sentenced before the SRA.

Sec. 235(a)(1) originally provided in 1984:  "This chapter (the SRA) shall take effect on the first day of the first calendar month beginning twenty-four months after the date of enactment, except

that-- . . . ." As amended in 1987, it provided: "This chapter . .
. shall take effect on the first day of the first calendar month
beginning 36 months after the date of enactment [Oct. 12, 1984] and
shall apply only to offenses committed after the taking effect of
this chapter, except that-- . . . ." Subsection (a)(1) thus
provided an effective date for the SRA in general[8], including its
provisions abolishing parole, with respect to creation of the new
sentencing guidelines and persons to be sentenced thereunder. The
next subsection (b)(1), provided a exceptional effective date for
repeal of the parole statutes with respect to a person "who
committed an offense before the effective date" of the SRA. Section
235(b)(1)(A) of Pub.L. 98-473 (1984) expressly provided:

> The following provisions of law in effect on the day
> before the effective date of this Act shall remain in
> effect for five years after the effective date, as to an
> individual convicted of an offense . . . before the
> effective date. . . :
> (A) Chapter 311 of title 18, United States Code."

Id. Petitioners ignore this specific exception in the original
enactment, which clearly applied to them, in their interpretation of
the amended 235(b)(3). Sec. 235(b)(1)(A) specifically continued the
parole laws as to "old law" inmates, and was not deleted or changed
by the 1987 amendment.

Thereafter, Congress acted on several occasions to further
delay the effective date of the repeal of parole statutes with
regard to "old law" inmates. On December 1, 1990, Congress extended

---

[8]   The statutory exceptions in subsection (a)(1) to the general effective date are not relevant to petitioners' claims.

the period Chapter 311 remained in effect after Nov. 1, 1987, from five years to ten years.  Pub.L. 101-650, Title III, § 316, 104 Stat. 5115.  In 1996, Congress extended the period that Chapter 311 remained in effect after November 1, 1987, from ten years to fifteen years.  Pub.L. 104-232, section 2(a), 110 Stat. 3055, (cited as Parole Commission Phaseout Act of 1996).  Then, Congress deemed references to "fifteen" to be "eighteen" in Pub.L. 98-473, § 235(b), as it related to Chapter 311.  Pub.L. 107-273, § 11017, (set out as a note under 18 U.S.C.A. § 4202).  Finally, on September 29, 2005, in the "United States Parole Commission Extension and Sentencing Commission Authority Act of 2005," Congress provided: "For purposes of section 235(b) of the Sentencing Reform Act of 1984 (98 Stat. 2032) [Pub.L. 98-473, Title II, § 235, Oct. 12, 1984, 98 Stat. 2032, as amended, set out as a note under this section] as such section relates to chapter 311 of title 18, United States Code, [18 U.S.C.A. § 4201 et seq.] and the United States Parole Commission, each reference in such section to 'eighteen years' or 'eighteen-year period' shall be deemed a reference to '21 years' or '21-year period', respectively."  Pub.L. 109-76, § 2, 119 Stat. 2035.  It would make no sense whatsoever for Congress to extend the statutes providing for the USPC and parole continuously over the past 16 years, if their intent was complete abolition of the USPC and repeal of the parole statutes effective in either 1984 or 1989.  It makes sense that under Sec. 235(b)(1) of the SRA and the time-extension amendments, the parole statutes remain in effect for individuals convicted before October 12, 1984.  See Tripati v. USPC, 872 F.2d

328, 330 (9th Cir. 1989), *citing* <u>Lightsey v. Kastner</u>, 846 F.2d 329, 333 (5th Cir. 1988).

## STATUTORY LANGUAGE OF ORIGINAL SEC. 235(b)(3)

Petitioners' claims are based upon their creative interpretation of the following language in the original Sec. 235(b)(3): "The USPC shall set a release date . . . that is within the range that applies to the prisoner under the applicable parole guideline."  They interpret this language as replacing their sentences imposed by the courts with sentences of mandatory release dates within five years, stripping the USPC of all discretion in their cases to take any action other than setting mandatory release dates, and as mandating that the USPC set those dates before October 1984.

Petitioners read far more into this original provision than warranted by its general, familiar directive to make release decisions within the applicable parole guideline.  This court has thoroughly examined the same legislative history and enactments of Congress as petitioners and rejects their interpretation of this language.  <u>See</u> <u>Bledsoe</u>, 384 F.3d at 1235; <u>Skowronek v. Brennan</u>, 896 F.2d 264, 268-69 (7th Cir. 1990).  Petitioners' interpretation is undermined by Congress' amendment to the original Sec. 235(b)(3). As noted, the Tenth Circuit has characterized the amendment as a clarification that the USPC's authority continued to consider the release of "old law" inmates with discretion under the parole statutes.  Congress rationally intended for inmates to be subject to

the penalties in force at the time they committed their crimes.  <u>See</u>
<u>United States v. Burgess</u>, 858 F.2d 1512, 1514 (11th Cir. 1988) (per
curiam); <u>Skowronek</u>, 896 F.2d at 269 FN9.


**<u>APPLICABILITY OF AMENDED SEC. 235(b)(3)</u>**

     The last faulty premise underlying petitioners' claims is that
amended Sec. 235(b)(3) does not apply to them expressly or legally.
They allege in support that Congress expressed its intent for the
amendment to apply prospectively only.  They note the Act containing
a section amending 235(b)(3) has a general effective date of
December 7, 1987.  They argue the amendment, therefore, does not
apply to them but only to inmates sentenced after December 7, 1987.
They then reason that since the amendment does not apply to them
under the Act's express terms, the original version of Sec.
235(b)(3) must.  They further allege in support that applying the
amended 235(b)(3) to them is a retroactive application of law which
violates the Ex Posto Facto, the Bill of Attainder, and the Due
Process clauses of the U.S. Constitution.

     The court rejects petitioners' assertion that Congress
expressly provided amended Sec. 235(b)(3) applied only to inmates
sentenced after the effective date of the Sentencing Act, December
7, 1987.  Petitioners are correct that Congress, in the Sentencing
Act of 1987, amended the general applicability section of the SRA,
Sec. 235(a)(1), to provide for prospective application only; and
inserted in Sec. 26 at the end of the 1987 Act, a general provision

of prospective application[9].   Nevertheless, the court rejects petitioners' interpretation that either of these general provisions changed the applicability of Sec. 235(b)(3) from retroactive, as it unquestionably was in the original version, to prospective only in the amendment.   Petitioners ignore the language in the 1984 version of Sec. 235(b)(3) defining the set of inmates to which the original statute applied as ones sentenced before the Act.   This specific language made the statute retroactive and was not removed or changed in any way by the 1987 amendment.   As this court reasoned in <u>Von Kahl</u>:

> It is not disputed that the original version of Sec. 235(b)(3) expressly applied only to 'old law' inmates. Sec. 235(b)(3) was obviously promulgated for the very purpose of controlling this limited group of inmates not covered by the new sentencing guidelines.  (The) language in the original version of Sec. 235(b)(3) making it applicable only to 'old law' inmates, and its obvious purpose of dealing with 'old law' inmates were not altered.   The only changes made by the amendment . . . concerned the method of dealing with the eventual release of 'old law' inmates.  <u>Bledsoe</u>, 384 F.3d at 1238 ('The language of the 1987 amendment merely amended the original SRA to delete the clause requiring the Commission to set release dates within the guideline range.').   Thus, despite Congress' imprecision in sticking a general non-retroactivity provision in the Sentencing Act of 1987, the specific amendment to Sec. 235(b)(3) was not thereby rendered applicable to the opposite set of inmates than that which it was created to cover.   Nor did many 'new law' inmates thereby illogically become covered by repealed parole provisions on top of sentencing guidelines. . . .

<u>Id</u>. at *19-20.   The court finds no legal basis for holding that amended 235(b)(3) does not apply to petitioners and only applies

---

[9]     "Section 26. General Effective Date" of the Sentencing Act of 1987 provided, "amendments made by this Act shall apply with respect to offenses committed after the enactment of this Act."

retrospectively.

Petitioners' claims that applying the amended Sec. 235(b)(3) to them violates the Ex Post Facto, Bill of Attainder, and Due Process clauses have been rejected by this court in <u>Bledsoe</u> and <u>Von Kahl</u>, and by the Tenth Circuit Court of Appeals in <u>Bledsoe</u>.  See <u>Bledsoe</u> 384 F.3d at 1235, 1237-1239, and cases cited therein; <u>Von Kahl</u>, and cases cited therein.

For all the foregoing reasons and for the reasons stated in this court's opinion dated August 28, 2006, dismissing petitioners' prior habeas petition, <u>Von Kahl</u>, a copy of which is attached, the court concludes no grounds for federal habeas corpus relief are stated.

**IT IS THEREFORE ORDERED** that petitioners' Motion for Preliminary Injunction (Doc. 2) and Motion for Bail (Doc. 3) are denied.

**IT IS FURTHER ORDERED** that this action is dismissed and all relief is denied.

**DATED:  This 5th day of September, 2006, at Topeka, Kansas.**


**<u>s/RICHARD D. ROGERS</u>**
**United States District Judge**